TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00344-CR







Bruce Keith Marshall, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 92-696-K368, HONORABLE BURT CARNES, JUDGE PRESIDING






 This appeal is taken from a conviction for aggravated robbery. Tex. Penal Code
Ann. § 29.03 (West 1994). (1) After the jury found appellant Bruce Keith Marshall guilty, he
pleaded true to the enhancement allegation that he had been previously convicted of a felony. The
jury assessed appellant's punishment at seventy-five years' imprisonment.

 Appellant advances four points of error. In the first two points, appellant
challenges the factual sufficiency of the evidence to support (1) the finding that he used and
exhibited a deadly weapon, namely, a firearm, as alleged in the indictment, and (2) the finding
that he intentionally and knowingly threatened or placed Christine Saunders (complainant) in fear
of imminent bodily injury or death. In his third point of error, appellant contends that the trial
court erred in denying a motion for mistrial based on the State's failure to disclose exculpatory
evidence until mid-trial. Lastly, appellant urges that the trial court erred in allowing the State in
rebuttal to present evidence of three extraneous robbery offenses.

 On the morning of December 14, 1992, appellant entered the Franklin Federal
Bank in Williamson County located near the intersection of U.S. Highway 183 and R.R. 620. 
He approached the teller window manned by Christine Saunders, who was waiting on a bank
customer. When that customer left, appellant stepped forward, showed Saunders a note, and told
her to read it. When Saunders told him that she could not read the note because he was blocking
part of it with his fingers, appellant pulled out a black automatic handgun and pointed it at
Saunders. He slid the note closer to her. Saunders was able to read part of the note which
instructed her to give appellant loose bills in denominations of 100's, 50's, 20's, and 10's and
nothing else or he would kill her and not to call the police. Saunders felt her life was in danger
and that appellant would kill her if his instructions were not followed. For her own safety and
the safety of the other bank employees, Saunders decided not to try to activate any alarm or any
cameras.

 Saunders gave appellant approximately $4,600 in cash. Appellant took the money
and put it into pockets of his coat along with the note and the automatic handgun. As appellant
left the bank, Saunders triggered the bank alarm, notified her co-workers that she had been
robbed, screamed that the man had a gun, and began writing down a description of appellant.

 No bank employee other than Saunders saw appellant use or exhibit a gun. Apellant
had positioned himself at the teller station so that a partition blocked a view of appellant's
midsection for everyone except Saunders. Carol Bray, a financial counselor, spoke to appellant
as he entered the bank. He did not respond to her greeting, but just looked at her and proceeded
to Saunders' teller station. Bray saw him take a note out of his pocket. Her suspicions aroused,
Bray moved to another part of the bank indicating to others that a robbery might be taking place. 
David Dumbrique, who was at the third teller station, did not see a gun, but thought appellant's
body language indicated that he had a gun. Dumbrique observed that Saunders' face turned white
and had a terrified, paniced look. Saunders appeared to be in shock and scared to death.

 Dumbrique ran outside when Saunders announced the robbery. He spotted
appellant in a black Nissan Sentra with tinted glass. Appellant quickly drove away in a hard rain
and almost hit another automobile. Some fifteen or twenty minutes after the robbery, Joel
Thompson, an Austin police officer dressed in mufti and driving an unmarked police vehicle,
spotted appellant's automobile approximately eight miles from the bank. The car met the
description given by the police dispatcher. Thompson began to follow appellant while contacting
other police officers. Austin police officers were able to stop and arrest appellant. In the car the
officers found $4,420 in cash and a wet piece of a note stuck to an outside window of the car. 
The officers did not find a handgun or weapon of any kind. One officer explained that it would
have been difficult to recover a gun if appellant had thrown it away after he left the bank and
before he was spotted by Thompson.

 Testifying on his own behalf, appellant claimed the offense occurred with the
cooperation of Christine Saunders and that it was theft, not robbery and certainly not aggravated
robbery because he did not have a gun. Three or four weeks before the offense, appellant was
unemployed and in the vicinity of the bank looking for a job. Appellant related that he entered
the bank to "bust" a $100 bill and that Saunders made change for him. According to appellant,
he began "hitting upon her" (flirting), and he and Saunders engaged in a friendly conversation for
four or five minutes. About a week later, appellant encountered Saunders in a restaurant near the
bank. He moved to her table and they conversed about ten minutes. He gave Saunders his
telephone number, but she refused to give him her number. A day or so later, Saunders called
appellant at his motel room, and the next day she came to his room. Appellant recalled that they
talked for about an hour and a half.

 A few days later, Saunders visited appellant at his room in another motel. This
time a plan was discussed. Saunders told appellant that he met the description given in a flier
about a man who had recently committed several offenses in the Austin area. According to
appellant, Saunders informed him that there were no security guards at the bank and that the
security cameras were not in use until activated. She explained that appellant could approach her
teller window as if he were cashing a check and that she would give him the money. She
suggested that he have a note in an envelope which he could pass to her if a supervisor or other
bank employee looked over her shoulder during the transaction. She promised appellant the theft
would not be reported until he had left the bank. She insisted that the action occur on a Monday. 
They would later split the money taken.

 Appellant admitted that he entered the bank on December 14, 1992, and approached
Saunders' teller window; that he had the envelope with a note in his hand; that the note stated he
had a gun; that he conversed with Saunders,who passed the money to him; that he had no gun;
and that he left the bank and got into the Nissan automobile. On his drive away from the bank,
he tore up the envelope and the note and threw the pieces out of the car into the wind and rain.

 The Nissan automobile was shown to have been registered to Josephine Russell,who
also rented the motel room where appellant was staying. Appellant acknowledged that Russell
was an acquaintance with whom he had a sexual relationship.

 Appellant introduced a written confession taken from him by officers on the date
of the offense. In the statement, appellant admitted the robbery. He stated that he used a note
but did not have a gun. No mention was made of Saunders. The record also shows and appellant
admitted that sometime later he told an assistant county attorney and a Texas Ranger that "a dude
named John," an Austin police officer, had been blackmailing him, that he had paid money to the
officer, and that he committed the instant robbery because he needed $3000 more to pay the
officer. No mention of Saunders was made in these conversations. Saunders' alleged involvement
was not mentioned by appellant until his trial testimony. During his testimony, appellant was
impeached by evidence of three prior felony convictions.

 Appellant did introduce a printed funeral program that was found among appellant's
personal effects in the jail's property room. A handwritten notation thereon stated: "Christine
331-8009 - work." Officer Enriquez was called by the defense as a witness. He recalled seeing
the program when searching appellant's motel room after his arrest, but had no recollection of any
handwritten notation thereon.

 Saunders was "called" by the defense, (2) but her testimony was of little help to
appellant. She testified that her name was on a sign at her teller window, and she identified the
telephone number "331-8009" as being a "roll-over" number to the bank's listed number in the
telephone directory. She explained that when the listed number was in use the call is rolled-over
to "331-8009," and that this number was frequently given to bank customers and others and was
a well-known number. Saunders testified that she had never seen appellant before the offense and
denied that she had any part in the planning of any robbery or theft. She was a married woman
with a year-old child. She was not investigated by the bank after the offense and had in fact been
promoted to the position of financial counselor.

 In rebuttal, the State called three female bank tellers from different banks in the
Austin area, each of whom identified appellant as the man who robbed them at their respective
banks during the immediate weeks before the instant offense.

 The trial court submitted to the jury the charged offense as well as the lesser
included offenses of robbery and theft. At the guilt stage of the trial, the jury found appellant
guilty "as alleged in the indictment."

 The jury, as the trier of fact, is the judge of the credibility of the witnesses and the
weight to be given to their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). The
jury is entitled to accept or reject all or any part of the testimony by the witnesses for the State
or the accused. Beardsley v. State, 738 S.W.2d 681, 684 (Tex. Crim. App. 1983); Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert. denied, 488 U.S. 872 (1988). 
Reconciliation of evidentiary conflicts is solely a function of the trier of fact. Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Miranda v. State, 813 S.W.2d 724, 733-34 (Tex.
App.--San Antonio 1991, pet. ref'd). The fact-finder may draw reasonable inferences and
reasonable deductions from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.--Corpus Christi 1988, pet ref'd).

 In determining whether the evidence is legally sufficient to support the conviction,
we will consider the evidence in the light most favorable to the jury's verdict and, after so viewing
the evidence, we will determine whether any rational trier of fact could have found beyond a
reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307,
319 n.12 (1979); Valdez v. State, 776 S.W.2d 162, 165 (Tex. Crim. App. 1989), cert. denied,
495 U.S. 963 (1990); Bonham v. State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984), cert.
denied, 474 U.S. 865 (1985); Knabe v. State, 836 S.W.2d 837, 838 (Tex. App.--Fort Worth 1992,
pet. ref'd). This standard of review is applicable in both direct and circumstantial evidence cases. 
Herndon v. State, 787 S.W.2d 408, 409 (Tex. Crim. App. 1990); Christian v. State, 686 S.W.2d
930, 934 (Tex. Crim. App. 1985).

 Applying this standard of review, there can be no question that the evidence is
legally sufficient to support the conviction. Appellant does not even challenge the legal
sufficiency of the evidence. He contends that the evidence is factually insufficient in two respects. 
He relies upon this Court's decision in Stone v. State, 823 S.W.2d 375, 379 (Tex. App.--Austin
1992, pet. ref'd), which held that courts of appeals have the power to make a factual review of
the sufficiency of the evidence relative to the proof of the elements of the criminal offense. See
also Scott v. State, 861 S.W.2d 440, 445 (Tex. App.--Austin 1993, no pet.); Williams v. State,
848 S.W.2d 915, 917 (Tex. App.--Texarkana 1993, no pet.); Orona v. State, 836 S.W.2d 319,
321 (Tex. App.--Austin 1992, no pet.). The standard adopted in Stone provides that the reviewing
court is not bound to review the evidence most favorably to the prosecution, but it should also
consider the testimony of defense witnesses and the existence of alternative hypotheses. The
appellate court should set the verdict aside only if the verdict is so contrary to the overwhelming
weight of evidence as to be clearly wrong and unjust. Stone, 823 S.W.2d at 381. Appellant urges
that the evidence is factually insufficient to show that he used and exhibited a firearm during the
offense and, thus, there was no showing that the offense was aggravated robbery. Appellant
denied that he had a gun at the time of the offense and points to the fact that no gun was found
when he was arrested. He notes that Saunders was the only witness to place a gun in his hands
as the other bank employees did not see a weapon. Appellant acknowledged that he threw the
note away, but claims he did not have a firearm to dispose of.

 Appellant also urges that the evidence is factually insufficient to show that he
intentionally and knowingly placed Saunders in fear of imminent bodily harm or death, and thus
there was no robbery but only theft, which he admits he committed. Appellant's claim is based
in large measure on his own testimony that Saunders was part of the conspiracy to steal money
from the bank and that she was smiling at him when she gave him the money. He also relies upon
the notation on the funeral program although it was never established when the notation was made
or whether appellant had access to his property while in jail.

 After reviewing all the testimony of the defense witnesses and the existence of
alternative hypotheses, we hold that the jury's verdict was not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Scott, 861 S.W.2d at 445; Stone, 823
S.W.2d at 381. Appellant's first two points of error are overruled.

 In the third point of error, appellant contends that the trial court erred in overruling
a motion for mistrial "based on the State's failure to disclose exculpatory evidence until mid-trial." 
Appellant specifically refers to the handwritten notation "Christine 331-8009 - work" found on
a printed 1992 funeral program which was among the items in appellant's black bag held in the
property room of the Williamson County Sheriff's Office while appellant was an inmate of the
county jail. 

 Appellant claims a violation of the due process clause of the Fourteenth Amendment
to the United States Constitution. The suppression of evidence favorable to an accused upon
request violates due process when the evidence is material to either guilt or punishment,
irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83,
87 (1963); Means v. State, 429 S.W.2d 490, 495 (Tex. Crim. App. 1968). Under Brady, a
prosecutor has an affirmative duty to turn over material and exculpatory evidence which would
include impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). In Thomas
v. State, 841 S.W.2d 399 (Tex. Crim. App. 1992), the court traced the history of the State's duty
to disclose favorable evidence and concluded that federal due process is violated when a
prosecutor (1) fails to disclose evidence (2) which is favorable to the accused (3) that creates a
probability sufficient to undermine the confidence in the outcome of the proceedings. Id. at 702;
see also Ex parte Kimes, 872 S.W.2d 700, 702-03 (Tex. Crim. App. 1993).

 We turn first to the question of whether the State failed to disclose the evidence. 
As noted by appellant in his point of error, the "undisclosed" evidence became available in mid-trial when appellant's property in a black bag was brought from the jail property room to the
courtroom. In the bag was the funeral program on which was found the handwritten notation. 
Without a detailed account of how this came about, we observe that the trial court gave appellant
every opportunity to make use of the notation on the funeral program. No motion for continuance
was filed. Appellant introduced the funeral program and the notation thereon and called witnesses
to support the defense theory of conspiracy with Saunders. The evidence was also used by the
defense in jury argument. Appellant has failed to establish in the record what he would have done
differently had the notation on the funeral program been disclosed before trial or how its
disclosure probably affected the verdict. Under these facts we find no Brady violation. Watkins
v. State, 880 S.W.2d 16, 19 (Tex. App.--Tyler 1993, pet. ref'd); Smith v. State, 840 S.W.2d 689,
693 (Tex. App.--Fort Worth 1992, pet. ref'd) (holding that if the defendant received the Brady
material in time to put it to effective use at trial, his conviction should not be reversed simply
because it was not disclosed as early as it might or should have been disclosed); see also Juarez
v. State, 439 S.W.2d 345, 348 (Tex. Crim. App. 1969); United States v. McKinney, 758 F.2d
1036, 1050 (5th Cir. 1985).

 Appellant relies upon Damian v. State, 881 S.W.2d 102, 107 (Tex. App.--Houston
[1st Dist.] 1994, pet. ref'd). We decline to accept Damian as establishing any per se rule that
disclosure of Brady evidence during trial never cures any due process violation. The Damian
court cites no authority and advances no reasoning for the loose language in the opinion on which
appellant relies. It is not clear from the opinion that the evidence was disclosed during trial. It
appears the evidence (results of lab tests) were brought to light at the hearing on the motion for
new trial. Moreover, the Damian court found that the evidence was not favorable to the defense
and that there was no Brady violation.

 In addition to the evidence being disclosed during trial, appellant is not entitled to
a reversal of the conviction on the grounds of suppression of evidence unless he shows that at the
time of trial he did not know the facts allegedly withheld. See Means, 429 S.W.2d at 494; see
also Ex parte Russell, 738 S.W.2d 644, 648 (Tex. Crim. App. 1986); Givens v. State, 749
S.W.2d 954, 957 (Tex. App.--Fort Worth 1988, pet. ref'd). Appellant made no such showing. 
In fact, the opposite appears from counsel's remarks. Counsel told the trial court that he hesitated
to say why he was seeking appellant's belongings "because I'm afraid of giving up some trial
strategy," that he and appellant both believed there was something exculpatory in his property,
and that appellant had been in the jail property room and had seen his black bag. In argument,
defense counsel, referring to the evidence, stated: "We intentionally held back on that bit of
information."

 Moreover, a Brady violation does not arise if an accused using reasonable diligence
could have obtained the information at issue. William v. Scott, 35 F.2d 159, 163 (5th Cir. 1994);
cert. denied, 474 U.S. 1086 (1986); Jackson v. State, 552 S.W.2d 798, 804 (Tex. Crim. App.
1976), cert. denied, 434 U.S. 1047 (1985). The record here shows that the property was available
upon the filling out of a request form by appellant, and the trial court also suggested to counsel
that the property could be secured by a proper subpoena. We find no need to reach the second
and third prongs of Thomas. Point of error three is overruled.

 In point of error four, appellant contends that the "trial court erred in allowing the
State to present rebuttal evidence consisting of extraneous offenses." See Tex. R. Crim. Evid.
404(b). To counter the State's version of the facts, appellant testified of his encounter with
Saunders and her scheme to fleece the bank. He succumbed to her entreaties, but stated he never
had the intent to commit a robbery, much less aggravated robbery. He used a note only at
Saunders' suggestion. Appellant left the impression with the jury that he would never have been
involved except for his relationship with the bank teller.

 In rebuttal, the State called three female bank tellers from different banks in the
Austin area who testified that in weeks immediately preceding the instant offense, they were
robbed at their banks by appellant, who used a modus operandi similar to the one in the case sub
judice. They each stated that appellant presented a note stating that he had a gun, threatening to
kill or harm them if his demand for money was not met. None of these witnesses saw a gun, but
each indicated that they thought appellant had a gun and they did not hesitate to read the note or
to give appellant the money demanded. None of the witnesses had ever seen appellant before the
occasion in question.

 Before these extraneous offenses were admitted into evidence, the careful trial court
heard this testimony in the absence of the jury. At the conclusion of this separate hearing, the
trial court ruled that the evidence was relevant and admissible as exceptions to Rule 404(b), and
in performing the balancing test determined that the probative value of the evidence was not
substantially outweighed by its prejudicial effect. Tex. R. Crim. Evid. 403. In its jury charge,
the trial court gave limiting instructions as to the evidence admitted. There was no objection to
the charge.

 Appellant urges that the evidence was erroneously admitted in violation of Rule
404(b) which provides:



(b)  Other crimes, wrongs or acts


Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show that he acted in conformity therewith. It may,
however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident,
provided, upon timely request by the accused, reasonable notice is given in
advance of trial of intent to introduce in the State's case in chief such evidence
other than that arising in the same transaction.



 The list in Rule 404(b) of eight purposes for which evidence of other crimes,
wrongs, or acts may be admitted is a nonexhaustive, nonexclusive list. See McCormick,
Handbook of the Law of Evidence, § 190, 799 (4th ed. 1990); Montgomery v. State, 810 S.W.2d
372, 388 (Tex. Crim. App. 1990). Rule 404(b) does not create a presumption that evidence of
other crimes is relevant. The burden is on the proponent of the evidence to demonstrate
relevance. Hulen D. Wendorf, David A. Schlueter, and Robert R. Barton, Texas Rules of
Evidence Manual, IV - 65 (3d ed. 1994) (hereinafter Wendorf). Evidence that is relevant may be
admissible for more than one reason or exception to Rule 404(b). See Johnson v. State, 650
S.W.2d 784, 788 (Tex. Crim. App. 1983); Burton v. State, 762 S.W.2d 724, 727 (Tex.
App.--Houston [1st Dist.] 1988, no pet.).

 In the instant case, appellant denied the intent to commit robbery or aggravated
robbery clearly putting intent in issue and rendering the evidence admissible under Rule 404(b). 
See Sattiewhite v. State, 786 S.W.2d 271, 282-85 (Tex. Crim. App. 1989); Parks v. State, 746
S.W.2d 738, 738-41 (Tex. Crim. App. 1987); Keller v. State, 818 S.W.2d 425, 428-29 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd); Dabney v. State, 816 S.W.2d 525, 528-29 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd); Wendorf, IV - 68. Moreover, the complained-of
evidence was admissible to show "preparation," "plan," scheme, or modus operandi. Wendorf,
IV - 69; Simon v. State, 743 S.W.2d 318, 324 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd);
Hargraves v. State, 738 S.W.2d 743, 747-49 (Tex. App.--Dallas 1987, pet. ref'd); see also United
States v. Hill, 898 F.2d 72, 75 (7th Cir. 1990). Furthermore, the evidence was also admissible
to rebut the defensive theory of the case that only a theft was committed, Crank v. State, 761
S.W.2d 328, 343, 345-46 (Tex. Crim. App. 1988), cert. denied, 493 U.S. 874 (1989), and to
rebut statements by appellant that left a false impression with the jury. Garibay v. State, 787
S.W.2d 128, 130 (Tex. App.--Corpus Christi 1990, pet. ref'd). Appellant's contention is without
merit.

 Appellant also urges a violation of Rule 403. He cites no authorities and presents
no argument. There has been no compliance with the briefing rules. Tex. R. App. P. 74(f). 
Nothing is presented for review as to a claimed violation of Rule 403. Point of error four is
overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Kidd and Onion*

Affirmed

Filed: December 13, 1995

Do Not Publish
















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   For the sake of convenience, the current version of the Penal Code is cited. Appellant
was tried under the former § 29.03 in effect at the time of the alleged offense. See Act of
May 29, 1989, 71st Leg., R.S., ch. 357, § 2, 1989 Tex. Gen. Laws 1441, 1442-43.
2.   Appellant's counsel made no announcement that he was recalling Saunders for further
cross-examination. The court reporter's record shows "Direct Examination" of Saunders by
the defense and "Cross-Examination" when the prosecutor later interrogated her.



"BR1">

 The list in Rule 404(b) of eight purposes for which evidence of other crimes,
wrongs, or acts may be admitted is a nonexhaustive, nonexclusive list. See McCormick,
Handbook of the Law of Evidence, § 190, 799 (4th ed. 1990); Montgomery v. State, 810 S.W.2d
372, 388 (Tex. Crim. App. 1990). Rule 404(b) does not create a presumption that evidence of
other crimes is relevant. The burden is on the proponent of the evidence to demonstrate
relevance. Hulen D. Wendorf, David A. Schlueter, and Robert R. Barton, Texas Rules of
Evidence Manual, IV - 65 (3d ed. 1994) (hereinafter Wendorf). Evidence that is relevant may be
admissible for more than one reason or exception to Rule 404(b). See Johnson v. State, 650
S.W.2d 784, 788 (Tex. Crim. App. 1983); Burton v. State, 762 S.W.2d 724, 727 (Tex.
App.--Houston [1st Dist.] 1988, no pet.).

 In the instant case, appellant denied the intent to commit robbery or aggravated
robbery clearly putting intent in issue and rendering the evidence admissible under Rule 404(b). 
See Sattiewhite v. State, 786 S.W.2d 271, 282-85 (Tex. Crim. App. 1989); Parks v. State, 746
S.W.2d 738, 738-41 (Tex. Crim. App. 1987); Keller v. State, 818 S.W.2d 425, 428-29 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd); Dabney v. State, 816 S.W.2d 525, 528-29 (Tex.
App.--Houston [1st Dist.] 1991, pet. ref'd); Wendorf, IV - 68. Moreover, the complained-of
evidence was admissible to show "preparation," "plan," scheme, or modus operandi. Wendorf,
IV - 69; Simon v. State, 743 S.W.2d 318, 324 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd);
Hargraves v. State, 738 S.W.2d 743, 747-49 (Tex. App.--Dallas 1987, pet. ref'd); see also United
States v. Hill, 898 F.2d 72, 75 (7th Cir. 1990). Furthermore, the evidence was also admissible
to rebut the defensive theory of the case that only a theft was committed, Crank v. State, 761
S.W.2d 328, 343, 345-46 (Tex. Crim. App. 1988), cert. denied, 493 U.S. 874 (1989), and to
rebut statements by appellant that left a false impression with the jury. Garibay v. State, 787
S.W.2d 128, 130 (Tex. App.--Corpus Christi 1990, pet. ref'd). Appellant's contention is without
merit.

 Appellant also urges a violation of Rule 403. He cites no authorities and presents
no argument. There has been no compliance with the briefing rules. Tex. R. App. P. 74(f). 
Nothing is presented for review as to a claimed violation of Rule 403. Point of error four is
overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Kidd and Onion*

Affirmed

Filed: December 13, 1995

Do Not Publish